**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| KENNETH J. LECKY; DOLORES ("D.D.") LECKY; AND PHILLIP RIDDERHOF,<br><br>        Plaintiffs,<br><br>      v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS; JAMES B. ALCORN, in his capacity as Chairman of the Virginia State Board of Elections; DR. CLARA BELLE WHEELER, in her capacity as Vice-Chair of the Virginia State Board of Elections; SINGLETON B. MCALLISTER, in her capacity as Secretary of the Virginia State Board of Elections; the VIRGINIA DEPARTMENT OF ELECTIONS; EDGARDO CORTÉS, in his capacity as Commissioner of the Virginia Department of Elections,<br><br>        Defendants. | Civil Action No. _1:17cv1336_ (TSE/IDD) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

### I.       INTRODUCTION

Pursuant to Rule 65, plaintiffs Kenneth J. Lecky, Dolores ("D.D.") Lecky, and Phillip ("Phil") Ridderhof move the Court for an order temporarily enjoining Defendants from certifying the results of the general election for District 28 of the Virginia House of Delegates, pending this Court's ruling on the merits. Plaintiffs further request a preliminary injunction, after a hearing to be scheduled at the Court's earliest convenience, incorporating the terms of the temporary restraining order. Granting injunctive relief will permit Defendants to further investigate the

137705833.2

scope of the serious irregularities that barred numerous voters from casting their ballot for House District 28 prior to certification. Plaintiffs further request that these injunctive orders be issued with no bond, or a nominal one.

## II.   STATEMENT OF FACTS

The relevant facts are set forth more completely in the complaint and the declarations submitted contemporaneously with this memorandum. To summarize:

The result of the November 7, 2017 election for Virginia's 28th House of Delegates District ("HD 28") has not yet been certified by the Board of Elections, and the outcome remains in doubt. As of the date of this filing, the margin between the candidates in that race is a mere 82 votes, and that margin will almost certainly change if all eligible voters are permitted a reasonable opportunity to cast a ballot in the election.

An initial review by the Virginia Department of Elections (the "Department") suggests that a significant number of voters were mis-assigned between House District 28 and House District 88, with at least 83 House District 28 residents being shown in the registration books as assigned to House District 88 (including Kenneth J. Lecky and D.D. Lecky), and vice versa. Those voters were given -- and voted -- ballots for the incorrect House of Delegates election. Moreover, several residents of House District 28 (including Phil Ridderhof) were given -- and voted -- a ballot for House District 88 despite being listed in the poll book as House District 28 voters.

These serious irregularities resulted in House District 28 residents inadvertently casting ballots in the House District 88 election and being improperly denied the right to vote in their own election. (In addition, many residents of House District 88 appear to have improperly voted in the House District 28 election.) Although the precise number of voters affected is not yet known, it likely is greater the 82-vote margin in the current vote total.

- 2 -

The Board of Elections has sought to investigate these irregularities, but it nevertheless intends to certify the results of the election no later than this Wednesday, November 22, 2017, and is scheduled to convene at 9:30 a.m. on Wednesday to do so.

### III.    ARGUMENT

**A.    Standard for Issuance of a Temporary Restraining Order**

Under Rule 65 of the Federal Rules of Civil Procedure, the decision whether to issue a temporary injunction is committed to the discretion of the Court. *See Hughes Network Sys. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). The Court utilizes the same four factor balancing test that is used for issuance of a preliminary injunction. *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).

"To win such a preliminary injunction, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest." *League of Women Voters of NC v. North Carolina*, 769 F. 3d 224, 236 (4th Cir. 2014).

**B.    Plaintiffs Meet Each Factor of the Test for Injunctive Relief**

> **1.    Plaintiffs Will Suffer Irreparable Harm If Defendants Are Not Restrained**
>
> > **a.    Losing the Right to Vote is an Irreparable Injury**

There is no adequate damages remedy for disenfranchisement. Thus, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of NC v. North Carolina*, 769 F. 3d 224, 247 (4th Cir. 2014) (collecting cases). In addition, the certification of erroneous election results is itself an irreparable injury. *See Shannon v. Jacobowitz*, 301 F. Supp. 2d 249, 258 (N.D.N.Y. 2003) (enjoining "[t]he Board of Elections" from "carrying out its ministerial function [by] certify[ing]" erroneous election results).

- 3 -

137705833.2

### b.      Virginia Law Provides Plaintiffs No Adequate Remedy

Moreover, because Plaintiffs have no state law remedy, they will be left with no remedy at all absent an order of this Court.

Under Virginia law, only candidates, not voters, may request recounts. Va. Code § 24.2-800(B). In any case, because Plaintiffs never received their ballots, a recount of the paper ballots cast on or before November 7 would not address the depravation of Plaintiffs' right to cast a ballot in the election.

Similarly, only a candidate, not a voter, can contest an election in Virginia. *Id.* § 24.2-803. And such a contest would be heard by the House of Delegates, not a court. *Id.*

Even if the voters had access to these remedies, they would not be adequate. "It is not a fair remedy to require the Board of Elections to certify an election result which it knows is incorrect. . . . It is not a fair remedy where the one avenue to correct such an injustice is available only after the fact, and then is purely discretionary and doubtless protracted." *Shannon*, 301 F. Supp. 2d at 257–58. Given that the procedures under Virginia law are inadequate to vindicate the rights of voters, "relief must be available to plaintiffs in this federal forum." *Id.* at 255 (enjoining certification of erroneous election results).

### 2.      A Weighing of the Equities Decidedly Favors Plaintiffs, As Defendants Will Not Be Harmed By a Temporary Injunction

Defendants will not suffer any legally cognizable harm if the court grants the injunctive relief requested by Plaintiffs. In particular, Defendants will not be damaged by an order prohibiting their certification of erroneous election results on Wednesday, November 22, 2017, 49 days before newly-elected members of the House of Delegates take office. Delegates elected at the November 2017 general election will not be sworn in until the first day of the legislative session, January 10, 2018. *See* Virginia Constitution art. IV, sec. 6. Consequently, delaying

- 4 -

137705833.2

certification of the erroneous results of the House District 28 will not delay the seating of a delegate for that district.

In any case, "any harm that would result from a slight delay in certifying the election results is minimal in comparison to the irreparable injury that occurs when an individual suffers the loss of his constitutional rights." *Awad v. Ziriax*, No. CIV-10-1186-M, 2010 WL 4676996, at *5 (W.D. Okla. Nov. 9, 2010); *see also Stein v. Thomas*, 672 Fed. Appx. 565, 569-70 (6th Cir. 2016) (upholding injunctive relief to modify state law procedures to avoid extinguishing voters' rights to accurate election returns).

Balanced against the harm that will be suffered by Plaintiffs if the temporary injunction is not issued -- the irretrievable loss of the right to vote in the election -- the balance of harms is decidedly in favor of Plaintiffs.

**3.      Plaintiffs are Likely to Prevail on the Merits of Their Claims**

The United States Constitution's protection of Plaintiffs' fundamental right to vote mandate that the election not be certified when voters are disenfranchised. "It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (internal citation omitted). That right "can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing." *Id.* (internal citations omitted). Here, it is quite clear that under any standard that Plaintiffs' right to cast a ballot in the House District 28 election have been violated.[1]

---

[1]      Although the "the closeness of the election" may be relevant in determining a plaintiff's right to relief, a plaintiff need not establish that with "mathematical certainty" that the errors in the election's administration tipped the outcome of the election. *Griffin v. Burns*, 570 F.2d 1065, 1080 (1st Cir. 1978). Rather, "invalidation of a potentially controlling number of the votes cast" is sufficient. *Id.*

- 5 -

### a. First Amendment and Equal Protection Clause

Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to an official act relating to voting must carefully balance the character and magnitude of the injury to First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the State for the burdens imposed by its actions. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *see also Hendon v. N. Carolina State Bd. of Elections*, 710 F.2d 177, 181 (4th Cir. 1983) ("A state may not, however, place an onerous burden on voters' exercise of their right to vote, and there must be a rational explanation when it is manifest that a greater burden may be placed upon the voter depending upon the method of voting employed in his voting place.").

Here, Virginia's failure to provide the correct ballot to each Plaintiff created a severe -- indeed insurmountable -- barrier to Plaintiffs' exercise of the franchise. *Cf. Frank v. Walker*, 819 F.3d 384, 386 (7th Cir. 2016) ("[P]laintiffs contend that high hurdles for some persons eligible to vote entitle those particular persons to relief. Plaintiffs' approach is potentially sound if even a single person eligible to vote is unable to get acceptable photo ID with reasonable effort. The right to vote is personal and is not defeated by the fact that 99% of other people can secure the necessary credentials easily."). "[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Accordingly, a state cannot arbitrarily deny the franchise to citizens "physically resident within the geographic boundaries" of an electoral district. *See Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 66-69 (1978) (collecting cases); *see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477-78 (6th Cir. 2008). The arbitrary denial of voters who reside in House District 28 to a ballot for that election violates these bedrock requirements.

137705833.2

Under the *Anderson-Burdick* balancing test, these severe burdens dramatically outweigh the interests of Virginia *not* to provide voters the correct ballot. Indeed, it is difficult to imagine what cognizable interest Virginia would have in the maladministration of its own elections. Indeed, the Virginia Board of Elections itself recognizes that the election in House District 28 was plagued by serious irregularities, is seeking to investigate further the scope of the problem, and recognizes it needs additional time to do so.

As such, it is overwhelmingly likely that the Plaintiffs will prevail under the First Amendment and Equal Protection Clause claims in Count I of their complaint.

### b.      Due Process Clause

The systemic denial of ballots to qualified voters has fundamentally undermined the legitimacy of the House District 28 election. Untold numbers of voters arrived at their proper polling place but were denied a ballot due to the widespread errors in the polling books and mistakes by poll workers providing the wrong ballot. This is the sort of "broad-gauged unfairness permeates an election, even if derived from apparently neutral action" that triggers the availability "federal relief" under the Due Process Clause. *Griffin v. Burns*, 570 F.2d 1065, 1077–78 (1st Cir. 1978); *accord League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (balloting errors sufficient to state claim for a violation of the Due Process Clause); *Ury v. Santee*, 303 F.Supp. 119 (N.D. Ill. 1969) (ordering new election when "failure of defendants to provide adequate voting facilities, plaintiffs and those similarly situated were hindered, delayed and effectively deprived of their rights" to vote). Given the widespread, systematic depravation of the qualified voters' access to their literal ballots for House District 28, Plaintiffs are likely to succeed on their due process claim.

### 4.      The Requested Relief Will Advance The Public Interest

Courts routinely hold that the vindication of constitutional rights is in the public interest.

- 7 -

*See, e.g.*, *Giovani Carandola, Ltd. v. Bason*, 303 F. 3d 507, 521 (4th Cir. 2002) ("upholding constitutional rights surely serves the public interest"). "By definition, '[t]he public interest ... favors permitting as many qualified voters to vote as possible.'" *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 248 (4th Cir. 2014). Given that there is no clear need to certify the results of the election seven weeks prior to the race's eventual winner taking office, the public interest clearly weighs in favor of injunctive relief.

**C.      Plaintiffs Should Be Required to Post No More Than a Nominal Bond**

Federal Rule of Civil Procedure 65(c) requires that, before a temporary restraining order is issued, that the moving party post a bond in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. The bond may be nominal under appropriate circumstances. Indeed, the Tenth Circuit construed the language of the rule as permitting a trial court to require no bond where the nonmoving party failed to demonstrate any injury. "The trial judge has wide discretion in the manner of requiring security and if there is an absence of proof showing the likelihood of harm, certainly no bond is necessary." *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964); *see also West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232, 236 (4th Cir. 1971) (finding a nominal bond of $100 was sufficient where defendant failed to show it would suffer more than negligible harm).

Here, there is no indication that Defendants would suffer any cognizable harm during the time that the temporary restraining order and preliminary injunction would be in effect. For this reason, Plaintiffs should not be required to post a bond. At most a minimal bond or no more than $1,000 would be adequate.

- 8 -

137705833.2

- 9 -

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for a temporary restraining order and preliminary injunction and enter an order temporarily enjoining Defendants from certifying the results of the general election for District 28 of the Virginia House of Delegates, pending this Court's ruling on the merits.

Respectfully submitted,

Dated: November 21, 2017

By: _Aria C. Branch_

Marc Erik Elias (*pro hac vice* to be filed)
Bruce V. Spiva (*pro hac vice* to be filed)
Aria C. Branch (VSB No. 83682)
Perkins Coie, LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 434-1627
Fax: (202) 654-9106
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com
Email: ABranch@perkinscoie.com

*Attorneys for Plaintiffs*

- 9 -

137705833.2

- 10 -

## CERTIFICATE OF SERVICE

I certify that on November 21, 2017, I filed the foregoing with the Clerk of the Court using the ECF System which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.


Date: November 21, 2017

*Aria C. Branch*
Aria C. Branch

137705833.2