**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **KENNETH J. LECKY**, et al., | |
| Plaintiffs, | |
| v. | |
| **VIRGINIA STATE BOARD OF ELECTIONS,** *et al.*, | Civil Action No.: |
| Defendants. | |

**PROPOSED INTERVENORS' BRIEF IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PERMANENT INJUNCTION**

This case does not belong in federal court. Proposed Intervenors' fight every day for fair, open, and honest elections, but it is essential that these Plaintiffs pursue their claims in the appropriate forum. The Plaintiffs do not allege that they were denied a ballot or that their votes were not counted—because they were given ballots, and their votes were counted. It is simply not clear whether they were given the proper ballots, as defined by *state* not *federal* law.

Far from a case of vote denial, or even vote dilution, the case concerns only whether Plaintiffs should have been given a ballot for House District 28 or House District 88. But the line between Districts 28 and 88 is created by state law, not federal law, and, as far as federal law is concerned, the state could have drawn it anywhere so long as the districts were apportioned within plus or minus 5% of equal population. Federal law is agnostic on the question of what ballot Plaintiffs should have been given, and the Constitution does not provide a mechanism whereby federal courts may require state officials to administer

Plaintiffs' view of where state law drew the district lines. Plaintiffs therefore cannot establish subject-matter jurisdiction, they identify no waiver of sovereign immunity, and, to the extent they pay lip service to federal standards, they fail to state a claim.

Rather, Plaintiffs' allegations, even if true, amount only to a case of "garden-variety election irregularities" of the genre the Fourth Circuit has warned are not within the domain of federal courts. *Hutchinson v. Miller*, 797 F.2d 1279, 1283 (4th Cir. 1986). The federal judiciary is not empowered to micromanage an "'ordinary dispute over the counting and marking of ballots,' involving complaints about missing signatures, ballots that should have been mailed rather than hand-delivered," or even "fraudulent votes." *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985). Nor are they empowered to adjudicate whether Plaintiffs reside in House District 88 or House District 28. "[S]tates are primarily responsible for regulating their own elections," *id.*, and this case belongs in the state system.

Plaintiffs are virtually certain to fail on the merits, and the equities weigh overwhelmingly against relief because a failure by the State Board of Elections to enjoin certification of the results would impose precisely zero harm on Plaintiffs, given that certification only begins the process of scrutiny of any irregularities; it does not end it. By comparison, enjoining certification would throw the recount and contest processes into uncertainty. There is no reason for the Court to delve into this matter of local concern, no reason to cause the confusion Plaintiffs invite, and no gain from doing either. Accordingly, Plaintiffs' emergency motion should be denied.

**FACTUAL BACKGROUND**

Plaintiffs' factual allegations, including their allegation that 88 residents of HD28 erroneously received ballots for HD88, are shrouded in confusion and lack a factual basis, but the background to this dispute, as best as Intervenors can tell, is as follows:

In 2011, the General Assembly redrew the district lines for all 100 House of Delegates Districts. Redistricting is accomplished by passage of a bill, which is signed by the governor and then recorded in the Virginia code. *See* Va. Code § 24.2-304.03. (It is not codified anywhere in the United States Code.)

The 2011 redistricting included a redrawing of lines in the area of Fredericksburg, which is split between HD88 and HD28. The redistricting bill placed Fredericksburg precincts 201 and 402 in HD28, it placed precincts 101 and 301 in HD88, and it split precinct 401 between HD28 and HD88. *Id.* § 24.2-304.03(D). However, the *precinct* lines are drawn by the City of Fredericksburg, not by the General Assembly. Accordingly, the 2011 redistricting bill specified that references to "parts of precincts" are "defined by reference to the 2010 Census reports," thereby ensuring that changes in precinct lines would not change the House District lines. *Id.* § 24.2-304.03(C).

Several months after the 2011 redistricting, Fredericksburg redrew its precinct lines. As a result, several precincts not formerly split between HD28 and HD88 became split between the districts, meaning that voters in the same precinct were located in different House Districts. Different voters, then, at the polling place would have different ballots from voters in polling booths next to them, depending, not on the current precinct lines, but on what the precinct lines *were previously* in the 2010 Census reports.

The allegation in this case is that some residents of HD28 were improperly (as defined by the Virginia Code) given ballots for HD88. Whether that is true or not, and how many voters are affected, is unclear because precinct boundaries that formerly aligned with HD88 and HD28 no longer align, which could easily confuse a voter, a poll worker, or a lawyer about what ballot is appropriate. For example, Plaintiffs' counsel, Marc Elias, wrote to the Virginia Board of Elections on November 15, 2017, representing that "approximately 668 votes" were improperly cast in HD88 rather than HD28. Now his number is "[a]t least 83." Compl. ¶ 20. It's anyone's guess what that number will be tomorrow, and what the number actually is will require further inquiry—it may be zero. Indeed, Plaintiffs concede that, to know what happened, they need to "investigate" further. Br. at 1.

This motion concerns the certification of the election results by the Virginia State Board of Elections. The Board met on Monday November 21 to certify results, but elected to utilize a three-day waiting period allowed by statute as to HD28 and HD88.  Intervenors are informed that, due to the holidays, the Board has taken the view that three business days allows them to delay until Monday. The Virginia Code, however, does not allow further time to certify the results, Va. Code §24.2-679, because certification is the *beginning* of the process of scrutinizing the election. Recounts and contests may occur subsequently but cannot proceed at present until certification occurs.

Plaintiffs' sole request in this motion is that the Court enjoin certification of the results. Mot. at 1.

4

## ARGUMENT

### I.     Standard Of Review

In order to demonstrate entitlement to a preliminary injunction, Plaintiffs must demonstrate the following four factors: "(1) [they are] likely to succeed on the merits, (2) [they are] likely to suffer irreparable harm, (3) the balance of hardships tips in [their] favor, and (4) the injunction is in the public interest." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013), citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Each element must be satisfied "as articulated." *Id.* Plaintiffs satisfy none of them.

### II.    Plaintiffs Are Not Likely To Succeed On The Merits

In order to demonstrate a likelihood of success on the merits, Plaintiffs must make a "clear showing" that they are likely to succeed at trial. *Pashby*, 709 F.3d at 321 (quotations omitted). Plaintiffs cannot make that showing because they cannot even clear the first hurdle to the federal courthouse: identifying a federal issue. This is not a diversity case, so Plaintiffs must establish that the controversy "arises under federal law," or, in other words, that the claim "will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First National Bank*, 299 U.S. 109, 112 (1936).

Plaintiffs' claim, in their own words, boils down to this: "due to an apparent error by the election registrar and poll workers, Plaintiffs were given the wrong ballots." Compl. ¶ 1. The operative term here is "*wrong* ballots," and neither the Constitution nor federal law will tell the Court what ballot is "wrong" and what is "right" for any voter; to answer that question, the Court will have to look to Virginia law. Thus, the claim will be "supported" or "defeated," not on a "construction or effect" of "the Constitution or laws of the United

5

States," but on the construction or effect of Virginia Code § 24.2-304.03. That is not a federal claim.[1]

Plaintiffs' choice of a federal forum to enforce state law is particularly offensive to the federal scheme because the Virginia State Board of Elections is an instrumentality of the state, and a suit against it and its agents is a suit against a sovereign that enjoys immunity under the Eleventh Amendment. Although the Supreme Court's *Ex Parte Young* doctrine provides an exception to immunity to allow federal courts to enforce *federal* law, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Thus, Eleventh Amendment immunity applies in full force to allegations that state agencies violated state law. State elections codes are no exception, *see, e.g.*, *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008), which is sufficiently well settled that courts summarily resolve claims to enforce rights under state elections codes in unpublished table decisions, *Young v. Illinois State Bd. of Elections*, 234 F.3d 1275 (7th Cir. 2000) (unpublished table decision) (summarily rejecting claim that state ballot access provision was "misapplied" because "that could not justify relief in federal court" under *Pennhurst*).

Plaintiffs' two merits arguments against this simple conclusion are frequently made and frequently lose.

---

[1] The movement of 83 voters from one district of about 80,000 persons to another of about 80,000 persons, as Virginia districts are, would not move the needle in terms of whether the districts are within plus or minus 5% of the ideal to comply with the one person, one vote principle. To make a difference in this regard, the discrepancy would have to be in the thousands.

The first is that Virginia's non-compliance with its own law was severe enough to constitute "broad-gauged unfairness" that "permeate[d]" the election so as to violate the Due Process Clause. Br. at 7 (quotations omitted). While such a claim is cognizable if the facts support it, the federal constitution is only implicated where election mal-administration results in "dilution of the fundamental right to vote and the denial of this right through class disenfranchisement." *Hutchinson v. Miller*, 797 F.2d 1279, 1283 (4th Cir. 1986). Examples include "total abrogation of a statutorily-mandated special election," *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985), widespread "retroactive invalidation of the absentee and shut-in ballots" after voters relied "upon official inducements" that the votes would be counted, *Griffin v. Burns*, 570 F.2d 1065, 1070–71 (1st Cir. 1978), and hours-long wait times at polling places that prevented innumerable voters from casting a vote, *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008), *Ury v. Santee*, 303 F. Supp. 119, 126 (N.D. Ill. 1969).

But by their own terms, these cases—the sole basis of Plaintiffs' Due Process argument—do not reach "the ordinary dispute over the counting and marking of ballots." *Griffin*, 570 F.2d at 1077. Thus, "local election irregularities, including even claims of official misconduct, do not usually rise to the level of constitutional violations," *id.*, and the cases where relief was denied far outnumber those where relief is granted, including cases where votes were not counted due to election machine errors, *White-Battle v. Democratic Party of Virginia,* 323 F. Supp.2d 696, 705 (E.D.Va. 2004) (Morgan, J.); *Hennings v. Grafton*, 523 F.2d 861 (7th Cir. 1975); human error in counting votes that threw the election to the wrong candidate, *Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980); and where ineligible voters

allegedly voted thereby diluting lawfully cast votes, *Pettengill v. Putnam Cty. R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973).

This case plainly involves garden-variety irregularities: at most, some ballots from HD88 were incorrectly handed to residents of HD28. The case is no different from *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970), which rejected a Fourteenth Amendment claim alleging that poll workers erroneously allowed voters not registered as Democrats to vote in the Democratic Party closed primary and tipped the scales in favor of the wrong candidate. Because "the due process clause and article I, section 2 offer no guarantee against errors in the administration of an election," there was no federal claim to giving Democratic Party ballots to non-Democrats. *Id.* at 88. Similarly, *Harris Cty. Dep't of Educ. v. Harris Cty., Tex.*, 2012 WL 3886427, at *7 (S.D. Tex. Sept. 6, 2012), rejected relief where elections administrators erroneously conducted an election under an invalid redistricting map, thereby sending the wrong ballots to the wrong polls, resulting in the wrong voters voting in the wrong districts. There being no constitutional protection from "entirely innocent human error," there was no federal claim. *Id.* at 6–7. So too here, Plaintiffs do not suggest that poll workers' distribution of the wrong ballots to 83 voters—if that even occurred—is anything but innocent human error, and if any voters voted in the wrong districts, it is of no concern to the Constitution.

Plaintiffs' second argument is under the *Anderson-Burdick* balancing test (Br. at 7), but this framework does not match the facts they alleged. The *Anderson-Burdick* test defines what election regulations do and do not "invidiously discriminate" against voters. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 (2008) (quotations omitted) (describing genesis of *Anderson-Burdick* test). Thus, the test is properly applied to a "voting

8

regulation" to assess whether it places an undue burden on the right to vote. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Plaintiffs challenge neither a "voting regulation" nor a calculated state decision that may amount to "invidious discrimination." They challenge what is at most unintentional human error. That type of action does not fall within the *Anderson-Burdick* line of cases, but rather under the above-cited cases on errors in elections administration. Were the rule otherwise, federal courts would always micromanage disputes on state election administration because, in Plaintiffs' rendition of the test, a state has no interest in "the maladministration of its own elections." Br. at 7. It appears never to have occurred to a federal court that a state would need to have an "interest" in "maladministration" if the state does not *intend* its mistakes. This is simply not the correct legal test for this case.

Besides, if it were the correct test, this case would be among the few election-irregularity cases that would pass. All votes at issue here *were counted*. Plaintiffs are only disappointed because they would prefer to have influenced the close race in HD28, but this implicates no burden on the right to vote. And Virginia has a compelling interest in not having to re-do all elections where poll workers make mistakes, so election certification is justified.

III. **The Balance Of Hardships Tip In Proposed Intervenors' Favor, And The Public Interest Is Not Served By Issuance Of The Proposed Injunction.**

The balance-of-hardships analysis in this case is simple: issuing an injunction would throw the Virginia House of Delegates elections into chaos; *not* issuing an injunction would involve no harm to Plaintiffs whatsoever. That is not a difficult choice.

The act at issue in this motion is certification of the election results for HD28 and HD88 by the Board of Elections. *See, e.g.*, Br. at 1. But certification of the results does not

9

inaugurate the declared winner into office. Certification is nothing more than a "ministerial" process of declaring "'the results as shown on the face of the returns." *Cundiff v. Jeter*, 172 Va. 470, 478 (1939) (quoting *City of Roanoke v. Elliott*, 123 Va. 393, 413 (1918). Under Virginia law, certification is the predicate to an orderly process of recounts or contests, under which the political parties and candidates will have access to poll books and other relevant information, Va. Code §24.2-802 to 803, so, in a close race, *see* Compl. ¶ 3, certification is only the *beginning* of the process of "investigat[ing] the scope" of any irregularities." Br. at 1–2.

Enjoining the certification would prevent recounts and contests, prevent the parties to such contests from having the discovery rights available, and would leave elections officials in total confusion as how to proceed—given that no finding of a constitutional violation has or could be made when Plaintiffs concede they must "investigate" further.[2] Br. at 1. On the contrary, denying an injunction does precisely zero harm to plaintiffs, because the Court, if it believes a federal issue worth litigating is present, *can still entertain the case if the results are certified*. Denying the injunction would simply allow the Board to perform its ministerial task and allow the state process to proceed.

IV. **Plaintiffs Are Not Likely To Suffer Irreparable Harm**

Finally, a party "seeking a preliminary injunction must prove that he or she is 'likely to suffer irreparable harm in the absence of preliminary relief.'" *Pashby*, 709 F.3d at 328, quoting *Winter*, 555 U.S. at 20. As described above, Plaintiffs here will suffer no harm if the

---

[2] Moreover, enjoining the Board from performing a ministerial function could expose the Board to a writ of mandamus from the Virginia Supreme Court, *see Whited v. Fugate*, 94 S.E.2d 292, 294-95 (Va. 1956), thereby placing federal and state judicial orders in intractable and unnecessary conflict.

10

elections results are certified because that begins, rather than ends, the process of scrutiny into the election, and—assuming this case is not immediately dismissed for reasons stated above—Plaintiffs could maintain this lawsuit regardless of certification. Moreover, as recognized in *Hutchinson*, 797 F.2d at 1286-1287, and *White-Battle*, 323 F. Supp. 2d at 705, Virginia law contains an election contest procedure, codified in Chapter 8, Title 24.2 of the Virginia Code, which allows Mr. Cole, as the losing candidate, to contest the results of the election under state law. Plaintiffs complain that they cannot participate, Br. at 4, but Mr. Cole is represented by their lawyer, Marc Elias, and he no doubt will represent their shared interests vigorously. Their contention that a recount or contest in the House of Delegates is inadequate because it is not in a court asks the Court to assume irregularity in standard operating procedure, which the Court cannot do without a substantiated basis to believe the House will not conduct an adequate process.

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied in its entirety.

Dated: November 22, 2017

Of counsel:

E. Mark Braden
BAKER & HOSTETLER LLP
1050 Connecticut Ave., NW, Suite 1100
Washington, DC  20036
202.861.1500 / Fax 202.861.1783
mbraden@bakerlaw.com

Patrick T. Lewis (*pro hac vice* pending)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
216.621.0200 / Fax 216.696.0740
plewis@bakerlaw.com

Respectfully submitted,

REPUBLICAN PARTY OF VIRGINIA,
DANIELLE J. DAVIS, MARK L. COLE, AND
ROBERT THOMAS, JR.

By Counsel

*/s/ Trevor M. Stanley*
Katherine L. McKnight (VSB No. 81482)
Trevor M. Stanley (VSB No. 77351)
Richard B. Raile (VSB No. 84340)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., NW, Suite 1100
Washington, DC  20036
202.861.1500 / Fax 202.861.1783
kmcknight@bakerlaw.com
tstanley@bakerlaw.com
rraile@bakerlaw.com