**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| KENNETH J. LECKY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | Civil Action No. 1:17-cv-1336 |
| VIRGINIA STATE BOARD OF ) | |
| ELECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Defendants, Registrar Greg Riddlemoser, Registrar Marc Hoffman, Chairman Rene Rodriguez, Vice Chair Marie Gozzi, and Secretary Gloria Chittum (collectively, the "Local Election Officials"), by counsel, pursuant to Rule 12(b)(6), move to the dismiss the Amended Complaint filed herein by the Plaintiffs, Kenneth J. Lecky, Delores Lecky, and Phillip Ridderhof, for the following reasons:

### I.   Statement of Pertinent Facts

1. This lawsuit seeks to invalidate an election for Virginia House of Delegates District 28 ("HD-28") on the alleged grounds that the Plaintiff voters' constitutional rights were violated during the November 7, 2017 election ("the Election").

2. The lawsuit alleges that 260 registered voters physically resided within the HD-28 political boundaries, but were listed in the Fredericksburg City and Stafford County Registrars' records as residing in HD-88. Eighty-six (86) of those voters are alleged to have cast ballots in the Election. (Am. Compl. ¶ 2.)

3. The lawsuit further alleges that 124 Virginia voters who physically resided within the HD-88 political boundaries were listed in the Fredericksburg City and Stafford County

1

Registrars' records as residing in HD-28. Of these, sixty-one (61) are alleged to have voted in the Election. (Am. Compl. ¶ 4.)

4. Finally, the lawsuit alleges that Phillip Ridderhof was handed a ballot at his polling place "due to apparent poll worker error." (Am. Compl. ¶ 3.)

5. These "misassignments" are alleged to have occurred due to the Local Election Officials "employing inadequate safeguards, including allocating insufficient resources, against erroneous depravations of the right to vote." Beyond this conclusory characterization of the registrars as having employed "inadequate safeguards," no specific factual allegations are provided. (Am. Compl. ¶ 33.)

6. It is further alleged that, by 11 a.m. on election day, the Fredericksburg City Defendants "knew of at least one voter who complained he was not able to cast a ballot for House District 28 because he was incorrectly given a House District 88 ballot," and that "the city of Fredericksburg nevertheless made no changes to its administration of the election, and provided no remedy to the voter who complained, to any plaintiff in this case, or to any other voter." (Am. Compl. ¶ 34.)

7. The Amended Complaint does not contend (nor could it) that the Local Election Officials were aware of the alleged 384 voters who had been "misassigned" by 11 a.m. on election day, and hence no allegation that any Local Election Official could have or should have pinpointed every voter affected by these alleged errors.

## II. Legal Standard

In order to survive a Motion to Dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III.   Argument

**a. The Amended Complaint alleges, at worst, clerical errors in the assignment of certain voter addresses to Virginia House Districts, and these errors are insufficient as a matter of law to establish that a constitutional violation has occurred or that the Plaintiffs are entitled to a mandatory injunction.**

The Amended Complaint alleges that 384 registered voters in Fredericksburg City and Stafford County were "misassigned" to an incorrect Virginia House District, of which 147 are alleged to have voted. No further factual particulars are offered in an effort to establish that

3

these clerical errors are a constitutional violation, other than the conclusory allegations—without any connective facts—that the Local Election Officials "employed inadequate safeguards" and "knew of at least one voter" who was "misassigned" on Election Day. These allegations fail to articulate an error of constitutional magnitude.

"Circuit courts have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities." *Hutchinson v. Miller*, 797 F.2d 1279, 1283 (4th Cir. 1986) (Wilkinson, J.).[1] This is because "[t]he constitution anticipates that the electoral process is to be largely controlled by the states and reviewed by the legislature." *Hutchinson*, 797 F.2d at 1283; *see also White-Battle v. Democratic Party of Va.*, 323 F. Supp. 2d 696, 705 (E.D. Va. 2004) *aff'd* 2005 U.S. App. LEXIS 11892 (4th Cir. June 21 2005) (per curiam). "[T]he general attitude of courts asked to consider election disputes, *whatever the relief sought*, has been one of great caution. Intervention has come only in rare and extraordinary circumstances, for courts have recognized and respected the delegation of such disputes to other authorities." *Hutchinson*, 797 F.2d at 1287 (emphasis added). This includes equitable relief, which "has been properly called a 'drastic if not staggering' intrusion of the federal courts, and 'therefore a form of relief guardedly exercised.'" *Id.* (quoting *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1967)). Consequently, courts have "repeatedly refused to intervene in routine election disputes, acting instead only in instances of 'patent and fundamental unfairness' that 'erode the democratic process.'" *Id.* (quoting *Hendon v. N.C. State Bd. of Elections,* 710 F.2d 177, 182 (4th Cir. 1983)). "Whether [an] irregularity amounts to a constitutional claim depends on its severity, whether it was

---

[1] *Accord Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978); *Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985); *Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980); *Hennings v. Grafton*, 523 F.2d 861 (7th Cir. 1975); *Pettengill v. Putnam County R-1 School District*, 472 F.2d 121 (8th Cir. 1973); *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970).

intentional or more of a negligent failure to carry out properly the state election procedures, and whether it erodes the democratic process." *Hendon*, 710 F.2d at 182.

The United States District Court for the Eastern District of Virginia's decision in *White-Battle v. Democratic Party of Virginia*, 323 F. Supp. 2d 696 (E.D. Va. 2004), *aff'd* 2005 U.S. App. LEXIS 11892 (4th Cir. June 21, 2005) (per curiam) (unpublished), is illustrative. In *White-Battle*, the plaintiff sought to become the Democratic nominee in the election for the Clerk of the Norfolk Circuit Court. *Id.* at 698. The plaintiff filed all necessary paperwork with the General Registrar for the City of Norfolk. *Id.* The plaintiff believed the nomination committee would select a nominee on May 21, 2003, but subsequently learned that the committee selected a candidate in March 2003 without publication of a notice that it would hold a caucus on that date. *Id.* The plaintiff filed an action under 42 U.S.C. § 1983 seeking prospective relief on the grounds that (1) the selection meeting was contrary to Virginia law and (2) several election-day irregularities undermined the legitimacy of the election results, including malfunctioning voting machines and improper vote counting procedures. *Id.* Following *Hutchinson*, the court dismissed the action, holding that federal courts have a "'significant duty . . . to preserve constitutional rights in the electoral process,'" but that this responsibility is limited to "'the general application of laws and procedures, not the particulars of election disputes.'" *Id.* at 705 (quoting *Hutchinson*, 797 F.2d at 1283). The court noted that examples of subjects of federal court intervention include "class-based restrictions on the right to vote, dilution of votes through malapportionment, and enforcing the Voting Rights Act to ensure equal voting regardless of race." *Id.* The court further noted that, to contest the minutiae of election administration, the plaintiff must apply to the circuit courts of the Commonwealth for whatever remedies are provided under state law. *Id.* at 706.

There are approximately 90,688 registered voters in Stafford County and 17,175 registered voters in the City of Fredericksburg. Registration Statistics, 2017 General Election, Department of Elections, *available at* http://results.elections.virginia.gov/vaelections/2017%20November%20General/Site/Statistics/Registration.html (last visited Dec. 22, 2017). The Amended Complaint alleges that 384 registered voters registered at addresses associated with incorrect House Districts. Of these, 147 voted. The alleged errors, while certainly undesirable, do not establish that a constitutional violation has occurred, and do not warrant federal intervention into this election for state office. Further, the Amended Complaint does not allege that these errors were intentionally or nefariously made; that they disproportionately impacted members of one political faction; or that they were discriminatory.

The U.S. Constitution does not guarantee error-free elections. It is also not a font of tort law designed to offer redress every time an innocent or even negligent error affects the electoral process. To state a plausible claim on its face, then, the Plaintiffs must go further than merely showing that a small cohort of voters, who were not denied the right to vote, inadvertently cast ballots in the wrong Virginia House District election.

### b. The Amended Complaint fails to state a claim for denial of equal protection or due process.

"[N]ot every denial of a right conferred by state law involves a denial of the equal protection of laws, even though the denial of the right to one person may operate to confer it to another." *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Id.*; *see also Sunrise Corp. v. City of Myrtle Beach*, 420 F.3d 322 (4th Cir. 2005) ("If disparate treatment alone was sufficient to

support a Constitutional remedy then every mistake of a local zoning board in which the board mistakenly treated an individual differently from another similarly situated applicant would rise to the level of a federal Constitutional claim.") (following *Snowden*, 321 U.S. at 11–12).

Further, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original). Rather, the "guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Id.* (emphasis in original). The Supreme Court has rejected the "reasoning that 'would make the *Fourteenth Amendment* a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 332.

The Amended Complaint alleges neither intentional discrimination nor intentional conduct. At most, the well-pled facts establish that innocent or negligent errors were made in the administration of the Election. These facts fail to establish an Equal Protection or Due Process claim as a matter of law.

### c. The *Anderson-Burdick* framework has no application to the irregularities at issue in the Amended Complaint.

The *Anderson-Burdick* framework is used to evaluate the constitutionality of state-imposed voting regulations and restrictions. The test balances the nature of the state-imposed burden against the justifications advanced by the state. *See generally Libertarian Party of Va. v. Va. State Bd. of Elections*, No. 1:10-cv615, 2010 U.S. Dist. LEXIS 97177, 2010 WL 3732012 (E.D. Va. Sept. 16, 2010) (Brinkema, J.) (providing a detailed discussion of the *Anderson-Burdick* framework in a ballot access case). While this framework is appropriate for evaluating the constitutionality of state regulations and restrictions, the *Anderson-Burdick* test has no application to this lawsuit which deals only with alleged irregularities in the Election. That is, the

Amended Complaint does not challenge any state restriction as unconstitutional, but rather only concerns irregularities in the enforcement of restrictions that are otherwise constitutional. Consequently, the *Anderson-Burdick* framework simply has no application to the facts of this case, and liability predicated upon violation of this legal standard fails to state a cognizable claim.

## IV. Conclusion

For the foregoing reasons, the Local Election Officials pray that this Court enter an Order dismissing this lawsuit with prejudice.

**Date:** January 4, 2018

MARIE GOZZI, VICE CHAIR
GLORIA CHITTUM, SECRETARY
GREG RIDDLEMOSER, REGISTRAR
MARC HOFFMAN, REGISTRAR
RENE RODRIGUEZ, CHAIRMAN

By: /s/ Michael G. Matheson

Michael G. Matheson (VSB No. 82391)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Tel.: (804) 698-5933
Fac.: (804) 780-1813
mmatheson@t-mlaw.com

*Counsel for Marie Gozzi, Gloria Chittum, Greg Riddlemoser, Marc Hoffman, and Rene Rodriguez*

**CERTIFICATE OF SERVICE**

I certify that, on January 4, 2018, a copy of the foregoing was filed electronically using the CM/ECF system, and that a Notice of Electronic Filing (NEF) was thereby transmitted to the following counsel of record:

Trevor M. Stanley, Esq.
Richard B. Raile, Esq.
BAKER & HOSTETLER LLP
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C. 20036

Joshua David Tully, Esq.
Williams & Connolly LLP (DC)
725 12th St NW
Washington, DC 20005

Michael Ward, Esq.
Charles Walker Terry, Esq.
McCandlish Holton Morris
1111 E Main St
Suite 2100
PO Box 796
Richmond, VA 23218-0796

Amanda R. Callais, Esq.
Aria C. Branch, Esq.
Brian Marshall, Esq.
Perkins Coie, LLP
700 13th Street, NW, Suite 600
Washington, D.C. 20005

Anna Tillie Birkenheier, Esq.
Heather Hays Lockerman, Esq.
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219

By:    /s/ Michael G. Matheson

Michael G. Matheson (VSB No. 82391)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Tel.: (804) 698-5933
Fac.: (804) 780-1813
mmatheson@t-mlaw.com

*Counsel for Marie Gozzi, Gloria Chittum, Greg Riddlemoser, Marc Hoffman, and Rene Rodriguez*